UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

RAUL VALDEZ,                                    Case No. 15-32100 BKC AJC

      Debtor.                                    Chapter 13

_____/

## DEBTOR'S MOTION FOR COURT APPROVAL TO SELL NON-HOMESTEAD PROPERTY

    **COMES NOW**, the Debtor, Raul Valdez, by and through undersigned counsel and files this Motion for Court Approval to Sell Non-Homestead Property, and as grounds therefore states the following:

1.    On or about December 28, 2015, the instant case was filed.

2.    The debtor listed his non-homestead property located at 15628 SW 100th Lane, Miami, FL  33196 in his bankruptcy schedules.

3.     The debtor now has the opportunity to sell his non-homestead property which is legally described as:

        ***Lot 10, Block 8, of LAKESIDE AT THE HAMMOCKS REPLAT according to the Plat thereof, as Recorded in Plat Book 134, at Page 83, of the Public Records of Miami-Dade County, Florida.***

4.    The Debtor has received an offer from a prospective buyer and has entered into a contract for the sale.  See "AS IS" Residential Contract for Sale and Purchase attached here to as Exhibit "A".

5.    The Debtor believes that after the mortgage and association fees are paid he will receive no proceeds from the sale.

**WHEREFORE**, the debtor prays that this Honorable Court enter an Order Granting Debtor's Motion for Court Approval to Sell the Non-Homestead Property.

## CERTIFICATE OF ADMISSION

**I HEREBY CERTIFY** that I am a member of the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent via ecf and/or regular mail this 31st day of March 2016 to: Nancy K. Neidich, Trustee, P.O. Box 279806, Miramar, FL  33027; Space Coast Credit Union, C/O Isabel V. Colleran, Esq., Blaxberg, Grayson, Kukoff & Forteza, P.A., 25 SE 2nd Avenue, Suite 730, Miami, FL  33131.

Respectfully Submitted:

**LAW OFFICES OF**
**EMMANUEL PEREZ AND ASSOCIATES, P.A.**
Attorney for Debtor
901 Ponce De Leon Blvd.
Suite 101
Coral Gables, Fl  33134
Tel. 305-442-7443

By: */s/ Emmanuel Perez*_____
        [x]Emmanuel Perez, Esq., FBN#586552

# EXHIBIT
## "A"

# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



1* **PARTIES:** _____ RAUL VALDEZ _____ ("Seller"),
2* and _____ Susana Guerra _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And
5 Purchase and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7* (a) Street address, city, zip: _____ 15628 SW 100 LN Miami, FL 33196 _____
8* (b) Property is located in: Miami-Dade County, Florida. Real Property Tax ID No.: 30-5904-053-1110
9* (c) Real Property: The legal description is LAKESIDE AT THE HAMMOCKS REPLT PB 134-83 LOT 10 BLK 8
10 LOT SIZE 4042 SQ FT
11
12 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14 by other terms of this Contract.
15 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16 which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17 purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18 drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security
19 gate and other access devices, and storm shutters/panels ("Personal Property").
20* Other Personal Property items included in this purchase are: _____
21
22 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23* (e) The following items are excluded from the purchase: _____
24

## PURCHASE PRICE AND CLOSING

26* **2. PURCHASE PRICE** (U.S. currency): ................................................................$ 280,000.00

27* (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ......$ 3,000.00
28 The initial deposit made payable and delivered to "Escrow Agent" named below
29* **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
30 blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31 OPTION (ii) SHALL BE DEEMED SELECTED.
32* Escrow Agent Information: Name: _____ , IncFlamingo Title Insurance Agency
33* Address: _____ 8500 SW 8 Street, Unit 250 Miami, FL 33144
34* Phone: 305-262-0028 E-mail: ileana@flamingotitleinsurance.com Fax: _____
35* (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36* days after Effective Date .....................................................................................$_____
37 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ 95%
39* (d) Other: _____ $_____
40 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41* transfer or other **COLLECTED** funds ................................................................$_____
42 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44 (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45* _____ March 31, 2016 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned
46 to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the
47 day the counter-offer is delivered.
48 (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49 initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51 and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52* ("Closing") on _____ or before May 20, 2016 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials SG _____    Page 1 of 12    Seller's Initials _____ _____

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

5. **EXTENSION OF CLOSING DATE:**

   (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

   (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

6. **OCCUPANCY AND POSSESSION:**

   (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

   (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

7. **ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

8. **FINANCING:**

   ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

   ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 45) days after Effective Date ("Loan Commitment Date") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and  for a term of _____(if left blank, then 30) years ("Financing").

   Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

   Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract **up to the earlier of:**

107         (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected
108            to waive the financing contingency of this Contract; or
109         (ii.) 7 days prior to the Closing Date specified in Paragraph 4, which date, for purposes of this Paragraph
110            8(b) (ii), shall not be modified by Paragraph 5(a).
111     If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms
112     of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
113     obligations under this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8,
114     then this financing contingency shall be deemed waived by Buyer.

115     If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter
116     close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related
117     conditions of the Loan Commitment have not been met (except when such conditions are waived by other
118     provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms
119     of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s)
120     the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this
121     Contract.
122*   ☐ (c) Assumption of existing mortgage (see rider for terms).
123*   ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

124                      **CLOSING COSTS, FEES AND CHARGES**

125   **9.**   **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
126     (a) **COSTS TO BE PAID BY SELLER:**
127       • Documentary stamp taxes and surtax on deed, if any     • HOA/Condominium Association estoppel fees
128       • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)   • Recording and other fees needed to cure title
129       • Title search charges (if Paragraph 9(c) (iii) is checked)     • Seller's attorneys' fees
130*      • Municipal lien search (if Paragraph 9(c) (i) or (iii) is checked)   • Other:_____
131       If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
132       a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
133       Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
134       pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
135     (b) **COSTS TO BE PAID BY BUYER:**
136       • Taxes and recording fees on notes and mortgages     • Loan expenses
137       • Recording fees for deed and financing statements     • Appraisal fees
138       • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)   • Buyer's Inspections
139       • Survey (and elevation certification, if required)     • Buyer's attorneys' fees
140       • Lender's title policy and endorsements     • All property related insurance
141       • HOA/Condominium Association application/transfer fees   • Owner's Policy Premium (if Paragraph
142       • Municipal lien search (if Paragraph 9(c) (ii) is checked)     9 (c) (iii) is checked.)
143*      • Other: _____
144*     (c) **TITLE EVIDENCE AND INSURANCE: At least** _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
145       then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a
146       Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
147       Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
148       obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
149       a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title
150       policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as
151       set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be
152       calculated and allocated in accordance with Florida law, but may be reported differently on certain federally
153       mandated closing disclosures and other closing documents.
154       **(CHECK ONE):**
155*      ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
156       premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
157       endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
158       provider(s) as Buyer may select; or
159*      ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
160       services related to Buyer's lender's policy, endorsements and loan closing; or
161*      ☒ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's
162       policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 054263-500145-9194329

*formsimplicity*

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

163    evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search;
164    and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for
165    Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more
166*   than $ _____ (if left blank, then $200.00) for abstract continuation or title search ordered or
167    performed by Closing Agent.

(d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
168    surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
169    Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
170

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
171*   _____ at a cost not to exceed $_____. A home
172*   warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
173    appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
174

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
175    ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
176    ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
177    improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
178    imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
179    be paid in installments **(CHECK ONE):**
180

181* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
182    Installments prepaid or due for the year of Closing shall be prorated.

183* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
184    IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

185    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
186    (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

187                                 **DISCLOSURES**

**10. DISCLOSURES:**
188

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
189    sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
190    exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
191    radon and radon testing may be obtained from your county health department.
192

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure,
193    Seller does not know of any improvements made to the Property which were made without required permits
194    or made pursuant to permits which have not been properly closed.
195

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned
196    or desires additional information regarding mold, Buyer should contact an appropriate professional.
197

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
198    zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
199    improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
200    or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish
201    and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s)
202    and /or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance
203    coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C.
204    §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank,
205    then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
206*   Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of
207    buildings and flood zone designation of Property. The National Flood Insurance Program may assess
208    additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
209    (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an
210    elevation certificate may be required for actuarial rating.
211

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information
212    Brochure required by Section 553.996, F.S.
213

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
214    mandatory.
215

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
216    **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
217    **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
218

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have _____ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 054263-500145-9194329

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

271    (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
272      cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
273      to Buyer.

274            **ESCROW AGENT AND BROKER**

275 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
276 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
277 within the State of Florida, and subject to **COLLECTION**, disburse them in accordance with terms and conditions
278 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
279 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
280 may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
281 or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
282 until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
283 determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
284 of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
285 action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
286 except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
287 broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
288 escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
289 Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
290 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
291 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
292 Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
293 due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
294 or termination of this Contract.
295 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
296 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
297 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
298 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
299 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
300 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
301 GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
302 FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
303 WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
304 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
305 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
306 at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
307 with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
308 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
309 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
310 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
311 recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services
312 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
313 vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors
314 and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not
315 relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,
316 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
317 Contract.

318           **DEFAULT AND DISPUTE RESOLUTION**

319 **15. DEFAULT:**
320    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
321      including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
322      Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
323      Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
324      obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
325      to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon

default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

<strong>STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")</strong>

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 054263-500145-9194329
formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

382  Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's
383  receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby
384  releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller
385  is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer
386  shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this
387  Contract.
388  **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
389  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
390  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
391  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
392  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
393  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
394  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
395  preparation of such prior survey, to the extent the affirmations therein are true and correct.
396  **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
397  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of
398  access.
399  **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
400  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
401  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
402  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
403  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
404  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to
405  Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice
406  to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating
407  this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations
408  under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's
409  obligations thereunder.
410  **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
411  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
412  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
413  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
414  general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
415  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all
416  charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages
417  have been paid or will be paid at Closing.
418  **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.**
419  Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or
420  dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or
421  occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the
422  Property is located) of the next business day.
423  **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
424  liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused
425  or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God,
426  unusual transportation delays, wars, insurrections, and acts of terrorism, and which, by exercise of reasonable diligent
427  effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
428  Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract,
429  provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14
430  days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
431  and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under
432  this Contract.
433  **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
434  personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
435  described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
436  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in
437  this Contract.
438  **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

Buyer's Initials **SG** _____                           **Page 8 of 12**                           Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-4x    Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 054263-500145-9194329

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

439  (i)  **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the
440  attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title
441  insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
442  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
443  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit
444  (s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
445  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable
446  the survey, flood elevation certification, and documents required by Buyer's lender.
447  (iii)  **PROCEDURE:** The deed will be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
448  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
449  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
450  **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
451  **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
452  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
453  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
454  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault
455  of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days
456  from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit
457  and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
458  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
459  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely
460  demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening
461  defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
462  **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as
463  of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
464  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
465  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if
466  assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may
467  be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will
468  be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated
469  based on current year's tax with due allowance made for maximum allowable discount, homestead and other
470  exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is
471  available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
472  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
473  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
474  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
475  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
476  informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at
477  either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive
478  Closing.
479  **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
480  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
481  including a walk-through (or follow-up walk-through if necessary) prior to Closing.
482  **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
483  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does
484  not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
485  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
486  cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
487  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
488  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
489  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
490  Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
491  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
492  **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
493  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall
494  cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided,

FloridaRealtors/FloridaBar-ASIS-4x    Rev.2/16 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 054263-500145-9194329

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

495 however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be
496 contingent upon, nor extended or delayed by, such Exchange.
497 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
498 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
499 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest.
500 Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery
501 given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be
502 as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal
503 delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and
504 any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use
505 of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
506 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
507 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
508 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or
509 change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties
510 intended to be bound by it.
511 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
512 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
513 rights.
514 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
515 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
516 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
517 **received, including Deposits, have become actually and finally collected and deposited in the account of**
518 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
519 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's**
520 **accounts.**
521 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
522 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a
523 pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract.
524 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
525 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
526 county where the Real Property is located.
527 **V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a
528 "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real
529 property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount
530 to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has
531 obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the
532 complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding
533 compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.
534 (i) No withholding is required under Section 1445 if the Seller is not a "foreign person", provided Buyer accepts
535 proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller,
536 signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S.
537 taxpayer identification number and home address (or office address, in the case of an entity), as provided for in
538 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller
539 on the transfer and timely remit said funds to the IRS.
540 (ii) If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated
541 withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced
542 sum, if any required, and timely remit said funds to the IRS.
543 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and
544 has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
545 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by
546 Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the
547 funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated
548 by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or
549 remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
550 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
551 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

552  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
553  disbursement in accordance with the final determination of the IRS, as applicable.
554  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
555  8288 and 8288-A, as filed.
556  **W.  RESERVED**
557  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
558  *and against any real estate licensee involved in the negotiation of this Contract for any damage or*
559  *defects pertaining to the physical condition of the Property that may exist at Closing of this Contract and*
560  *be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer.*
561  *This provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall*
562  *survive Closing.*
563  **ADDENDA AND ADDITIONAL TERMS**

564* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into
565  this Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☒ B.  Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C.  Seller Financing | ☐ M.  Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D.  Mortgage Assumption | ☐ N.  Coastal Construction Control Line | ☐ W.  Back-up Contract |
| ☐ E.  FHA/VA Financing | ☐ O.  Insulation Disclosure | ☐ X.  Kick-out Clause |
| ☐ F.  Appraisal Contingency | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Y.  Seller's Attorney Approval |
| ☐ G.  Short Sale | ☐ Q.  Housing for Older Persons | ☐ Z.  Buyer's Attorney Approval |
| ☐ H.  Homeowners'/Flood In | ☐ R.  Rezoning | ☐ AA.  Licensee Property Interest |
| ☐ J.  Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ BB.  Binding Arbitration |

566* **20. ADDITIONAL TERMS:** Buyer agree to pay an administrative fee of $ 395.00 to Miami Metro Realty, LLC
567  Sale not subject or contingent to appraisal *(PV)*
568
569
570
571
572
573
574
575
576
577
578
579
580
581
582

583  **COUNTER-OFFER/REJECTION**

584* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
585  deliver a copy of the acceptance to Seller).
586* ☐ Seller rejects Buyer's offer.

587  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
588  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

589  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

590  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
591  *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*

Buyer's Initials _SG_____    Page 11 of 12    Seller's Initials _XV_____

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 054263-500145-9194329

forms simplicity

592 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
593 *persons.*

594 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
595 BE COMPLETED.
596
597* Buyer: *Susana Guerra* _____    Date: 3/28/2016 _____
598
599* Buyer: _____    Date: _____
600
601* Seller: _____    Date: 3/28/2016. _____
602
603* Seller: _____    Date: _____
604
605 Buyer's address for purposes of notice          Seller's address for purposes of notice
606* _____          _____
607* _____          _____
608* _____          _____

609 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
610 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
611 to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the
612 parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the
613 escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing
614 Broker to Cooperating Brokers.

615* _____          _____
616 **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617* _____          _____
618 **Cooperating Broker, if any**          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-4x   Rev.2/16 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 054263-500145-9194329
formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



When initialed by all parties, the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between

RAUL VALDEZ _____ (SELLER)

and _____ Susana Guerra _____ (BUYER)

concerning the Property described as 15628 SW 100 LN Miami, FL 33196

**Buyer's Initials** SG _____    _____    **Seller's Initials** _RV_ _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

Disclosure Summary For _____ Hammocks Community _____
### (Name of Community)

(a) AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").

(b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

(c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $233.00_____ PER ____Quarter_____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

(d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

(e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

(f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

(g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

(h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

(i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

3/29/2016 _____    _Susana Guerra_____
DATE                                               BUYER

_____    _____
DATE                                               BUYER

CR-4  Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 082943-000145-9194540

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 69575fbd-9e00-4ddb-ab86-37b93200a436 ]